UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

TONI MORROW, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SUPERPLAY LTD., a foreign corporation,

Defendant.

Case No. 3:25-cv-6101-BHS

**FIRST AMENDED COMPLAINT – CLASS ACTION**

**DEMAND FOR JURY TRIAL**



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

Plaintiff Toni Morrow ("Plaintiff") brings this case, individually and on behalf of all others similarly situated, against Defendant Superplay Ltd. ("Defendant") to enjoin and obtain redress for Defendant's operation of an illegal gambling game and unfair competition. Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff alleges and amends her complaint as follows. Pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3), certain claims are pleaded in the alternative, and Plaintiff hereby gives notice under Federal Rule of Civil Procedure 44.1 of her intent to raise issues concerning the law of the State of Israel.

## NATURE OF ACTION

1. Defendant is the developer, publisher, owner, operator and proprietor of the game called "Dice Dreams."

2. Consumers play Dice Dreams on Apple iOS devices, Android devices and Amazon devices.

3. On information and belief, Dice Dreams launched in or around 2020.

4. The primary gameplay in Dice Dreams is the rolling of a three six-sided dice. Depending on the roll of the dice, whose outcome is determined by chance, players either lose their roll or win additional rolls, gold coins and/or the opportunity to play additional games of chance for rolls or coins. The virtual gold coins are used to access other game features.

5. Users can purchase additional packages of rolls and gold coins for prices ranging from $1.99 to $99.99.

6. When a player loses all of their rolls, they are unable to continue playing the dice game in Dice Dreams.

7. The outcome of the dice rolls in Dice Dreams is determined by chance.

8. Dice Dreams provides a limited number of free rolls to players. After players inevitably lose their allotment of rolls to Dice Dreams' game of chance, Defendant offers for sale additional rolls to extend the privilege of playing. Without additional rolls, players cannot play Dice Dreams' game of chance.



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

9. Players contract with Defendant when purchasing rolls. Freshly topped off with these additional rolls, players again wager those rolls in the hopes of a more fortunate outcome of chance that will allow the user to win additional rolls or more coins and have the privilege of continuing to play.

10. The rolls won by players playing Defendant's games of chance are identical to the rolls that Defendant sells. Thus, by wagering rolls that consumers purchase, consumers have the chance to win additional rolls that they would otherwise have to purchase. These rolls extend players' privilege to continue playing the games of chance in Dice Dreams.

11. The Ninth Circuit in *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785 (9th Cir. 2018) held that the mobile game Big Fish Casino "constitutes illegal gambling under Washington law." *Id.* The Court reached this conclusion, in part, on the basis that the virtual chips offered in Big Fish Casino were things of value because they extended the right of players to play the games in Big Fish Casino. Similarly, the rolls in Dice Dreams are things of value as they extend the right of players to play the dice game in Dice Dreams.

12. Though the dice games in Dice Dreams look different from games found on a traditional casino floor, they are nonetheless games of chance in which users can win or lose these things of value.

13. In addition to providing games of chance wherein users can win or lose things of value, Defendant seeks to maximize the amount of money each user spends in Dice Dreams by advertising bundles that Defendant misleadingly states are on sale for a limited time. In reality, the sale offers are not actually limited in time.

14. Defendant's "limited time" sales offers in Dice Dreams are deceptive in at least three respects. First, Defendant represents that specific bundles are available only for a limited duration when, in fact, the same or substantially identical bundles are continuously and predictably re-offered. Second, Defendant represents that the prices offered are uniquely discounted or "special" values when, in fact, the same prices for the same bundles are routinely available. Third, Defendant uses countdown timers and urgency language that are designed to and do trigger impulse-purchase behavior unrelated to the actual scarcity or value of the offer.



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

15. On information and belief, Defendant's offer-presentation system is programmed to re-offer substantially similar bundles on a predictable, recurring cycle. The cycling of these offers is a product of code that Defendant wrote, controls, and maintains. The recurrence is not occasional, accidental, or market-driven; it is a programmed, deliberate feature of Defendant's monetization strategy.

16. On information and belief, Defendant profits from Dice Dreams.

17. On information and belief, Defendant has received revenues in excess of $100 million from United States consumers and millions of dollars from Washington residents.

18. By operating Dice Dreams, Defendant has violated Washington and other states' laws and illegally profited from thousands of consumers. Accordingly, Plaintiff, on behalf of herself and a Class of similarly situated individuals, brings this lawsuit to recover their losses.

## PARTIES

19. Plaintiff Toni Morrow is a natural person who is domiciled in the state of Washington.

20. On information and belief, Superplay Ltd. is headquartered in Israel.

21. On information and belief, the address for the corporate office of Superplay Ltd. is 23 Menachem Begin Street, Tel Aviv, Israel.

22. On information and belief, Superplay Ltd. has participated in the development, operation, and publishing of Dice Dreams, including activities related to the advertising of in-game items.

## JURISDICTION AND VENUE

23. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

24. This Court has personal jurisdiction over Superplay Ltd., because it conducts substantial business and directs its activities into this District, including activities that form the basis for the claims here, and a substantial part of the acts and omissions complained of occurred in this District.

25. Defendant has purposefully directed its activities toward this District.



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

26. Defendant has purposefully availed itself of the privileges of conducting activities in this District.

27. Plaintiff's claim arises out and relates to Defendant's forum-related activities.

28. The exercise of jurisdiction over Defendant is reasonable.

29. On information and belief, Defendant localizes Dice Dreams for each market where it is distributed, including the United States. This localization includes changes to the language and currency presented in Dice Dreams.

30. On information and belief, Defendant has sold over a million dollars of virtual items to thousands of Washington residents, including many instances of repeat purchases by the same customers, by contracting with the customers to sell rolls, coins and other goods/services in exchange for legal tender.

31. Dice Dreams facilitates ongoing economic activity between thousands of Washington users and Defendant.

32. On information and belief, Defendant directly controls whether consumers in Washington can complete purchases from Dice Dreams.

33. On information and belief, Defendant has the capability to determine where its customers are from, including whether purchases are being made from Washington.

34. On information and belief, Defendant has the capability to prevent Washington residents from completing purchases or placing wagers in Dice Dreams, but has chosen to accept those purchases and wagers from Washington residents. For example, other gambling applications prevent transactions from residents of states where gambling is unlawful.

35. On information and belief, Defendant has taken no steps to restrict Washington residents' access to Dice Dreams or to restrict the ability of Washington residents to make purchases from Dice Dreams.

36. On information and belief, Defendant distributes Dice Dreams, in part, via the Amazon Appstore.



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

37. On information and belief, in order to distribute Dice Dreams via the Amazon Appstore, Defendant entered into a developer agreement with Amazon.com Services LLC and its affiliates. On information and belief, Amazon is headquartered in this District.

38. On information and belief, the developer agreement Defendant entered into with Amazon's affiliates requires that the laws of the State of Washington apply and that the governing courts be the state and Federal courts in King County, Washington.

39. On information and belief, Defendant partners with companies to serve targeted online ads. On information and belief, these ads are targeted at users that Defendant identifies as potentially interested in Dice Dreams, including residents of Washington. On information and belief, Defendant utilizes Identifier for Advertisers ("IDFA"), Google Advertising ID and IP addresses in connection with these targeted ads. This information allows Defendant to identify the geographic location of its ad targets, including whether they are in Washington.

40. On information and belief, Defendant has taken no steps to restrict its advertisements for Dice Dreams from reaching residents of Washington.

41. On information and belief, in addition to Amazon, Defendant has entered into development agreements with Apple and Google for the distribution of Dice Dreams. On information and belief, under each of those agreements, Defendant has accepted responsibility for the compliance of Dice Dreams with federal and state laws, including those of Washington.

42. Venue is proper in this District under 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this District. All of Plaintiff's activities and losses in Dice Dreams occurred in this District.

43. Washington has a strong and specific interest in protecting its residents from illegal gambling, codified in the legislature's declaration at RCW 9.46.010 that "[t]he public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control." Washington has further codified a private cause of action for the recovery of gambling losses at RCW 4.24.070, which was enacted to protect Washingtonians. Washington's interest in protecting in-



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

state consumers at the point of sale is materially greater than the interest of any foreign jurisdiction in protecting a foreign gambling operator from claims brought by Washington residents.

44. To the extent Defendant contends that Israeli law is applicable and that Dice Dreams is not considered a prohibited gambling game under Israeli law, application of Israeli law would deprive Washington consumers of the substantive protections of Washington's gambling recovery statute, RCW 4.24.070, which provides a private right of action for the recovery of gambling losses.

45. In addition, venue is proper in this District under 28 U.S.C. §1391(b)(1) and §1391(b)(3), in that Defendant is subject to this Court's personal jurisdiction.

46. Plaintiff alleges, upon information and belief, that Defendant conducts professional and commercial activities in Washington on a substantial, continuous, and systematic basis and therefore Defendant is subject to the general jurisdiction of the courts of this state.

47. Plaintiff further alleges, upon information and belief, that the claims asserted in this complaint arise out of or are related to each of the Defendant's professional and commercial activities within Washington, and therefore the Defendant is subject to the specific jurisdiction of the courts of this state.

## FACTUAL ALLEGATIONS

48. The proliferation of internet-connected mobile devices has led to the growth of what are known in the industry as "free-to-play" videogames. The term is a misnomer. It refers to a model by which the initial download of the game is free, but companies reap huge profits by selling thousands of "in-app" items that start at low prices but can quickly escalate to hundreds or even thousands of dollars.

49. The in-app purchase model has become particularly attractive to developers of games of chance and games marketed towards children, because it allows them to generate huge profits. With games of chance that employ the in-game purchase strategy, developers exploit the same psychological triggers as casino operators. Just as with casino operators, mobile game developers rely on a small portion of their players to provide the majority of their profits. These "whales," as they're known in both the casino industry and the videogame industry, account for a small minority of players but provide the vast majority of revenue.

50. Defendant is a mobile gaming company founded in 2019 with offices in Israel, Ukraine and Romania.

51. In 2024, Defendant was acquired by Playtika Holding Corp. at a reported value of up to $1.95 billion. Playtika is a mobile game developer whose games include Vegas Downtown Slots, World Series of Poker, Caesars Slots, Slotomania, and Poker Heat.

**Dice Dreams is an Unlawful Game of Chance**

52. Users can download and play Dice Dreams on Amazon, Apple, and Android devices in the US.

53. The primary gameplay in Dice Dreams is a dice-rolling game where players roll three six-sided dice:




54. On information and belief, the outcome of the dice rolls is determined by chance.

55. Like a slot machine, Dice Dreams has an "auto roll" function.

56. Depending on which symbols turn up on the dice, users can win additional rolls and/or gold coins (either directly or after engaging in an additional game of chance).



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

57. Players wager rolls on each roll of the dice. Players can increase the number of rolls they wager to increase the potential payout and are encouraged to do so with prompts such as “HIGHER BETS AVAILABLE! SUPER BOOST!”:




58. “Rolls” in Dice Dreams, which are symbolized with lightning bolts, represent the number of attempts a player has to play Dice Dreams’ dice game. In this way, rolls in Dice Dreams are the same as chips in a casino. A player must stake one or more rolls to play Dice Dreams’ game of chance. If players do not have any rolls remaining, they cannot play the dice game:

59. If a player runs out of rolls, they must purchase additional coins to continue playing.

60. When a player tries to press the button to roll the dice but has no rolls remaining, Dice Dreams presents a series of purchase offers for additional rolls, including misleading discount offers that are purportedly time-limited.



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185







61. Washington defines "gambling" as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." RCW 9.46.0237.

62. Players of Dice Dreams stake or risk something of value when playing the dice game in Dice Dreams. Specifically, players stake or risk one or more rolls to roll the dice. The dice-rolls in Dice Dreams are a contest of chance. If a player has a fortunate outcome in a dice-roll he will either lose the wagered rolls or win additional rolls.

63. "Contest of chance" means "any contest, game, gaming scheme, or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." RCW 9.46.0225.



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

64. Chance plays a predominant factor in the outcome of the dice games in Dice Dreams.

65. Washington defines "thing of value" to mean "any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

66. The rolls in Dice Dreams are things of value, because they provide an "extension of a service, entertainment or a privilege of playing a game or scheme without charge."

67. While the symbology is different, the dice games in Dice Dreams have all the same trappings as casino dice games or slot machines, including graphics and sounds.

68. Dice Dreams is distributed through Amazon, headquartered in this District, and Apple Inc. and Google LLC, headquartered in California.

69. Players of Dice Dreams who make purchases within Dice Dreams process their purchases through Amazon, Apple, and Google.

70. As a result of engaging in the conduct alleged in this Complaint, Defendant has also violated other state and federal gambling laws, including those of California (California Penal Code §§ 330a, 330b, 330, *et seq*., 337j(a)(1), 337j(a)(2)); Kentucky – The Illegal Gambling Business Act of 1970 (18 U.S.C. §1955); and The Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§5361-5367).

**Dice Dreams Engages in False Advertising**

71. To further manipulate users into spending money, Dice Dreams also falsely advertises sales. Dice Dreams presents users with purportedly limited time "sales" on in-game items. Players reasonably understand the term "sale" in this context to mean that a special offer or discount is being offered. Players reasonably understand that the sale being offered is of limited duration and availability.

72. For example, new users of Dice Dreams are presented with a "First Timer Special" offer purporting to be available for only a limited duration (typically 12 hours, displayed via a countdown timer). The following screenshot is representative of the "First Timer Special" offer presented to new users of Dice Dreams:




73. Throughout gameplay, including in the immediate aftermath of a player's loss of rolls in the dice game and even after a player makes his or her first purchase, Dice Dreams presents additional sale offers featuring countdown timers, urgency language and misleading purported discounts. Representative examples of these offers, captured from Dice Dreams, include the following:










74. Despite communicating that each such offer is of a special value and will be available for only a limited duration, Dice Dreams in fact offers the same or substantially identical sale bundles on a continuous, predictable, recurring cycle. For example, bundles that are advertised as being available for only a limited time reappear within hours of a previous "expiration," often at the same price point and with the same contents, but reset with a new countdown timer creating the false impression that the offer is again newly available for a limited time. The price points and bundle contents Defendant advertises as "discounted" or "special" are, on information and belief, the same price points and contents that Defendant routinely offers in the ordinary course, with no actual price reduction.

75. The repetition of these offers is not occasional. It is constant, predictable, and a programmed feature of Defendant's monetization system. On information and belief, the recurrence cycle is set and controlled by code Defendant authored and maintains, with the deliberate purpose of inducing impulse purchases.

76. In so doing, Defendant further manipulates users into spending money in Dice Dreams by





Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

creating the false impression that users are receiving a unique value.

77. The false perception of a fleeting sale causes players to make impulse purchases in Dice Dreams.

78. Defendant's false and misleading advertisements, particularly in the context of addictive and unlawful games of chance whose odds are manipulated, further constitutes unfair competition.

79. The use of countdown timers in connection with sale offers in Dice Dreams has the capacity to deceive consumers. Further, the utility of using these countdown timers is outweighed by the deception and harm caused to consumers. Defendant could reasonably offer in-game purchases in Dice Dreams without the use of deceptive countdown timers. On information and belief, the primary purpose and effect of the use of deceptive countdown timers in Dice Dreams in connection with misleading sale offers is to trick users into making purchases and not to benefit consumers.

80. On information and belief, without Court intervention, Defendant will continue to publish mobile games that engage in unlawful gambling and unfair competition intended to induce consumers to make purchases.

**Plaintiff's Experience with Dice Dreams**

81. In or around 2024, Plaintiff began playing Dice Dreams through her Android device in Washington. Plaintiff downloaded Dice Dreams from her residence in Washington. After losing her initial allocation of free rolls, she began purchasing rolls from Defendant for use in Dice Dreams. She made her purchases in Dice Dreams from Washington, which Defendant accepted.

82. Overall, Plaintiff has wagered and lost over $1,000 at Dice Dreams' game of chance. She lost the rolls she purchased from Defendant by wagering them in Dice Dreams' dice game. She placed her wagers in Dice Dreams from Washington.

83. Plaintiff viewed sales advertisements the same or substantially similar to those depicted above and other purported special time-limited offers. She reasonably understood that the sale offers were of a unique value and would be available for only a limited time. She reasonably relied on this understanding in making one or more of her purchase decisions.

84. For example, on May 30, 2024, Plaintiff spent $4.30 on a "Special Offer." That same day

she was presented with, and purchased, a "Special Offer" for the same price. On June 1, 2024, Plaintiff was presented with, and purchased, another "Special Offer" and paid $9.69. On June 2, 2024 she spent $14.00 on another "Special Offer." On June 3, 2024, she spent $37.71 on another "Special Offer." These purchases are illustrative. Plaintiff's total Dice Dreams purchases were in excess of $1,000. Plaintiff made numerous other purchases of purported special, time-limited offers in Dice Dreams, a complete record of which is available to Defendant through its internal records associated with Plaintiff's game account.

85. Plaintiff wagered each of these purchased rolls in the dice game in Dice Dreams. Because the outcome of the dice game is determined by chance and the odds are set by Defendant, Plaintiff lost the rolls she purchased through gameplay, just as a casino patron loses chips wagered at a slot machine or craps table. Plaintiff placed all wagers from Washington.

86. As a result of Defendant's unfair, unlawful, and deceptive acts, Plaintiff and putative class members were induced into making in-game purchases they otherwise would not have made.

87. As a result of Defendant's unfair, unlawful, and deceptive acts, Defendant was unjustly enriched.

88. Plaintiff stopped playing Dice Dreams by September 2024, but has an ongoing interest in playing Dice Dreams if it were changed to be devoid of unlawful, deceptive and unfair business practices. Plaintiff therefore has an ongoing interest in Dice Dreams' compliance with state and federal gambling laws and state unfair competition laws.

## CLASS ACTION ALLEGATIONS

89. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of herself and the following proposed classes and sub-classes:

a) **National Class**: All persons in the United States who made in-game purchases in Dice Dreams during the applicable statutory period for recovery.

**b)** **Washington Sub-Class:** All persons in the State of Washington who made in-game purchases in Dice Dreams during the applicable statutory period for recovery.

90. The following people are excluded from the Class: (1) any Judge or Magistrate presiding



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; (6) the legal representatives, successors, and assigns of any such excluded persons; and (7) individuals who are bound by enforceable mandatory arbitration and class waiver provisions. Plaintiff reserves the right to define other exclusions from the Classes.

91. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence she would use to prove those elements in an individual action alleging the same claims.

92. This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiff can demonstrate the elements delineated below.

93. **Numerosity**. The members of the proposed Classes and Sub-Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. See Fed. R. Civ. P. 23(a)(1). While Plaintiff believes that there are thousands of members of each of the proposed Classes and Sub-Classes, the precise number of class members is unknown, but may be ascertained from Defendant's books and records and other third-party sources.

94. On information and belief, Defendant maintains a list of users that includes personal information for the user including their email addresses or Apple or Google or other personal identifier, whether they have made in-app purchases, which in-app purchases they have made and when those purchases were made.

95. **Ascertainability**. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control or Plaintiff and the class members themselves.

96. On information and belief, Defendant also has the ability to send notices to its users through the user interface of Dice Dreams.



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

97. On information and belief, the Classes are also ascertainable through third-parties, such as Apple and Google, using business records, and other information kept by such third parties, in the usual course of business.

98. Plaintiff anticipates providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

99. **Commonality and Predominance**. This action involves common questions of law and fact, which predominate over any questions affecting individual class members. See Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

a. Whether the dice game in Dice Dreams is "gambling" as defined by RCW §9.46.0237;

b. Whether Defendant is the proprietor for whose benefit the unlawful gambling games are played;

c. Whether Defendant violated the Washington Consumer Protection Act, RCW §19.86.010, *et seq*.;

d. Whether Defendant engaged in the conduct alleged in the Complaint;

e. Whether Defendant violated statutes analogous to those alleged herein applicable;

f. Whether Defendant designed, advertised, marketed, distributed, sold, or otherwise placed Dice Dreams into the stream of commerce in the United States and State of Washington;

g. How the odds in the dice game of Dice Dreams are determined or set;

h. Whether Defendant's presentation of sales in Dice Dreams are misleading to a reasonable consumer;

i. Whether Plaintiff and members of the Classes are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts;

j. Whether Plaintiff and members of the Classes are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint;

k. Whether Defendant has been unjustly enriched; and

l. Whether, in the event Israeli law applies, Defendant's conduct violated Israeli Consumer Protection Law §§ 2 and 3, Israeli Contracts Law §§ 15 and 30, Israeli Unjust Enrichment

Law § 1, and Israeli Torts Ordinance §§ 35–36 and 56.

100. **Typicality**. Plaintiff's claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured through Defendant's wrongful conduct as described above. See Fed. R. Civ. P. 23(a)(3).

101. Defendant's creation, display and operation of Dice Dreams, its games and its misleading advertisement is uniform for Plaintiff and all members of the Classes.

102. **Adequacy**. Plaintiff is an adequate proposed class representative because her interests do not conflict with the interests of the other members of the proposed Classes she seeks to represent; because she has retained counsel competent and experienced in complex class action litigation; and because she intends to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiff and her counsel. See Fed. R. Civ. P. 23(a)(4).

103. **Declaratory and Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. See Fed. R. Civ. P. 23(b)(2). Defendant's wrongful conduct alleged herein is grounded in the creation and dissemination of Defendant's offerings in Dice Dreams, which are displayed and operate uniformly. Plaintiff's and the class members' injuries are real, immediate, and ongoing. Plaintiff and class members seek injunctive and declaratory relief against Defendant.

104. **Superiority**. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

105. Applying the principles of equity or balance of equities, expecting an individual plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Defendant, a corporation valued at over $1 billion that has



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

immense resources, would be unfair. Class actions are a necessary and essential means to provide for public interest litigations with checks and balances to curtail deceptive practices by powerful private corporations, including Defendant.

106. There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. See Fed. R. Civ. P. 23(b)(3).

## FIRST CLAIM FOR RELIEF

### Violation of Revised Code of Washington §4.24.070

### (On behalf of the Washington Sub-Class)

107. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

108. Plaintiff, members of the Washington Sub-Class, and Defendant are all "persons" as defined by RCW § 9.46.0289.

109. Washington's "Recovery of money lost at gambling" statute, RCW 4.24.070, provides that "all persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

110. "Gambling," defined by RCW § 9.46.0237, "means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence."

111. Rolls sold for use in Dice Dreams are "thing[s] of value" under RCW § 9.46.0285.

112. The dice game in Dice Dreams is illegal gambling because it is an online game at which players wager things of value (rolls) and by an element of chance (e.g., the result of the dice-roll) are able to obtain additional entertainment and extend gameplay (by winning additional rolls).



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

113. Defendant is the proprietor for whose benefit Dice Dreams is played because it owns Dice Dreams and operates it for Defendant's profit.

114. Plaintiff and the Washington Sub-Class gambled when they purchased rolls to wager in Dice Dreams' dice game and wagered those rolls in Dice Dreams' dice game.

115. Plaintiff and each member of the Washington Sub-Class staked money, in the form of rolls purchased with money, at Defendant's game of chance for the chance of winning additional things of value (e.g., rolls that extend gameplay without additional charge).

116. In addition, Dice Dreams and the games therein are not "pinball machine[s] or similar mechanical amusement device[s]" as contemplated by the statute because:

a. the games are electronic rather than mechanical;

b. the games confer replays but they are recorded and can be redeemed on separate occasions (i.e., they are not "immediate and unrecorded"); and

c. the games contain electronic mechanisms that vary the chance of winning free games or the number of free games which may be won (e.g., the games alter the odds of winning levels).

117. RCW § 9.46.0285 states that a "'Thing of value,' as used in this chapter, means any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

118. The "rolls" Plaintiff and members of the Washington Sub-Class had the chance of winning in Dice Dreams are "thing[s] of value" under Washington law because they are credits that involve the extension of entertainment and a privilege of playing a game without charge.

119. The "rolls" Plaintiff and members of the Washington Sub-Class staked in Dice Dreams are "thing[s] of value" under Washington law because they are credits that involve the extension of entertainment and a privilege of playing a game without charge.

120. The games in Dice Dreams are "Contest[s] of chance," as defined by RCW § 9.46.0225,



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

because they are "contest[s], game[s], gaming scheme[s], or gaming device[s] in which the outcome[s] depend[] in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." The games in Dice Dreams are programmed to have outcomes that are determined to a material degree upon chance.

121. In addition, Dice Dreams and the games therein are not "Amusement games" as defined by RCW § 9.46.0201 because:

a. The outcome does not depend in a material degree upon the skill of the contestant;

b. Merchandise is not the only prize awarded;

c. The outcome is in the control of the operator, Defendant.

122. As a direct and proximate result of Defendant's gambling games, Plaintiff and each member of the Washington Sub-Class have lost money wagering at Defendant's games of chance.

123. Plaintiff, on behalf of herself and the Washington Sub-Class, seeks to recover all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable.

**SECOND CLAIM FOR RELIEF**

**Violations of Washington Consumer Protection Act RCW Chapter 19.86**

**(On behalf of Plaintiff and the Washington Sub-Class)**

124. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

125. Washington Consumer Protection Act RCW 19.86.020 states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

126. Washington Consumer Protection Act RCW Chapter 19.86 entitles Plaintiff and members of the Washington Sub-Class to a private right of action for damages and equitable relief. RCW 19.86.020; 19.86.090; 19.86.093.

127. Defendant develops, markets and operates Dice Dreams throughout the United States, including Washington.

128. "In a private action in which an unfair or deceptive act or practice is alleged under RCW 19.86.020, a claimant may establish that the act or practice is injurious to the public interest because it:



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

(1) Violates a statute that incorporates this chapter; (2) Violates a statute that contains a specific legislative declaration of public interest impact; or (3)(a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons." RCW 19.86.093.

129. Defendant violated RCW § 9.46.010, et seq. which declares that: "The public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control. It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, both to preserve the freedom of the press and to avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace."

130. Defendant has violated RCW § 9.46.010, et seq., because Dice Dreams offers illegal online gambling games.

131. Defendant's wrongful conduct occurred in the conduct of trade or commerce, namely, while Defendant was engaged in the operation of making computer games available to the public.

132. Defendant's acts and practices were and are injurious to the public interest because Defendant, in the course of its business, continuously advertised to and solicited the general public in Washington State and throughout the United States to play their unlawful online gambling games of chance. This was part of a pattern or generalized course of conduct on the part of Defendant, and many consumers have been adversely affected by Defendant's conduct and the public is at risk.

133. Defendant's operation of Dice Dreams as an unlicensed gambling enterprise is "unfair" within the meaning of RCW 19.86.020.

134. Plaintiff and class members have collectively lost millions of dollars wagering on Defendant's games of chance. Plaintiff individually lost in excess of $1,000.



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

135. Dice Dreams is designed to exploit the same psychological triggers as commercial casino operations, including variable-ratio reinforcement, loss-aversion bias, and the “near miss” effect. Defendant identifies and targets a small subset of users (“whales”) who provide the majority of revenue and is on notice that these users cannot reasonably avoid the harm caused by continued play. Defendant nonetheless continues to accept their wagers.

136. The same entertainment value that the game offers could be provided without the gambling structure that makes the game unlawful under Washington law. The gambling structure provides no consumer benefit; it serves only to maximize Defendant’s revenue.

137. Independently, Defendant’s operation of Dice Dreams is unfair because it violates the express public policy of the State of Washington declared by the legislature in RCW 9.46.010.

138. Defendant’s wrongful conduct occurred in the conduct of trade or commerce, namely, while Defendant was engaged in the operation of making computer games available to the public.

139. Defendant's acts and practices are injurious to the public interest because (a) they violate a statute containing a specific legislative declaration of public interest impact; (b) they have injured numerous Washington consumers; and (c) they have the capacity to continue injuring Washington consumers.

140. As a result of Defendant's unfair and deceptive conduct, Plaintiff and the class members were injured in their business or property by losing money wagering on Defendant's unlawful games of chance and by paying for in-game items they would not otherwise have purchased.

141. Defendant has also engaged in unfair or deceptive acts or practices through the sale of in-game items in Dice Dreams advertised using misleading limited-time sale offers. Defendant has violated the “unfair" prong of RCW 19.86.020 by falsely representing that sales in Dice Dreams contained unique, time-sensitive discounts, when, in fact, they contained the same in-game items as other packs not connected with specific sales events.

142. Defendant engaged in unfair and deceptive acts or practices through the sale of in-game items in Dice Dreams advertised using misleading limited-time sale offers in connection with illegal gambling. Defendant falsely represented that sales in Dice Dreams contained unique, time-sensitive



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

discounts when, in fact, the same or substantially identical bundles at the same price points were continuously and predictably re-offered.

143. Defendant's use of countdown timers, urgency language, and "limited time" framing has the capacity to deceive a substantial portion of consumers. These representations are material to consumer purchase decisions because they create the false impression of scarcity and unique value, inducing impulse purchases consumers would not otherwise make.

144. In addition to being deceptive, Defendant's use of "limited time" sale offers and countdown timers in Dice Dreams is "unfair" within the meaning of RCW 19.86.020, because the practice causes substantial injury to consumers. Plaintiff and class members have collectively paid millions of dollars in response to limited-time-sale framing that misrepresents the scarcity and value of in-game items.

145. Further, the injury is not reasonably avoidable by consumers. The game's design — illegal games of chance, countdown pressure, post-loss timing of offer presentation, and exploitation of loss-aversion and impulse-purchase psychology — renders the deception not reasonably avoidable by consumers in the moment of decision.

146. Still further, the injury is not outweighed by countervailing benefits. Consumers receive the same in-game items they would receive in the absence of the limited-time framing, at the same prices that are continuously available. The "limited time" presentation provides no consumer benefit. It serves only to induce purchases that consumers would not otherwise make.

147. Defendant has profited immensely from its operation of unlawful games of chance and related conduct, amassing hundreds of millions of dollars from the losers of their games of chance.

148. As a result of Defendant's conduct, Plaintiff and the class members were injured in their business or property—i.e., economic injury—in that they lost money wagering on Defendant's unlawful games of chance.

149. Plaintiff and class members were harmed as a result of Defendant's deceptive practices, as Defendant's use of deceptive advertising increased their purchases and resulting gambling losses.

150. Plaintiff and class members were also harmed because the value of what they received for



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

in-game purchases was less than what she paid.

151. Defendant's unfair or deceptive conduct proximately caused Plaintiff's and the class members' injuries because, but for the challenged conduct, Plaintiff and the class members would not have purchased items in Dice Dreams or lost money wagering at or on Defendant's games of chance, and they did so as a direct, foreseeable, and planned consequence of that conduct.

152. Plaintiff, on her own behalf and on behalf of the Washington Sub-Class, seeks to recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

## **THIRD CLAIM FOR RELIEF**

### **Fraudulent Inducement**

### **(By Plaintiff, individually and on behalf of the National Class and Washington Sub-Class)**

153. Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

154. Defendant represented to Plaintiff and individuals similarly situated that various in-game purchases in Dice Dreams were on sale and that special limited time events or "sale" versions of in-game items were being offered at uniquely good values.

155. Each in-game purchase made by Plaintiff and members of the class constitutes a discrete contract for the sale of virtual items between the purchaser and Defendant. Defendant fraudulently induced Plaintiff and class members to enter into these purchase contracts through a uniform course of conduct, programmed into the game's code.

156. Defendant represented to Plaintiff and class members, through the game's user interface, that specific in-game purchase bundles were available for only a limited time, specific in-game purchase bundles were being offered at unique, special, or discounted prices, the countdown timers displayed on purchase offers reflected actual scarcity and the impending expiration of an opportunity that would not soon recur, and the opportunity to purchase a particular bundle at the represented price was non-recurring or substantially non-recurring.

157. Each of these representations was false at the time it was made because the same or substantially identical bundles at the same prices were continuously re-offered on a programmed

recurring cycle. The "limited time" framing was a recurring sales tactic rather than a description of actual scarcity.

158. Defendant had actual knowledge of the falsity of its representations at the time they were made. Defendant authored, controls, and maintains the offer-presentation code that determines the timing, framing, and recurrence of every limited-time sale offer presented in Dice Dreams.

159. Defendant made these representations with the intent to induce Plaintiff and class members to enter into purchase contracts they would not otherwise have entered. The very purpose of countdown timers and "limited time" framing is to create artificial urgency that induces purchase decisions consumers would not make in the absence of such pressure.

160. The representations were material because a reasonable consumer would consider the represented scarcity, limited availability, and unique value of a sale offer to be significant factors in deciding whether to make an immediate purchase rather than wait, decline, or shop for alternatives. Defendant designed its offer-presentation system precisely because it understood and intended to exploit the materiality of these representations to consumer purchase decisions.

161. Plaintiff and members of the class were exposed to and relied upon Defendant's uniform misrepresentations in deciding to make in-game purchases.

162. Plaintiff and class members relied on the misrepresentations in a common way, because they were uniform, the countdown timers and "limited time" communications were prominent, repeated, and integral to the purchase-decision interface, the purpose and function of the misrepresentations were to induce purchases that consumers would not otherwise make, a rational consumer's decision to purchase an item presented under "limited time" framing for an immediate, time-pressured price reflects reliance thereon as a description of actual conditions, and the purchases were made in immediate temporal and visual proximity to the misrepresentations, in a manner that supports a presumption of reliance.

163. Plaintiff and class members were justified in relying on Defendant's representations because (a) the representations were affirmative statements presented in the Game's user interface, not vague puffery; (b) consumers reasonably expect that countdown timers and "limited time" framing in



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

commercial contexts reflect actual scarcity, as such representations would be unlawful in most consumer contexts if they did not; (c) consumers had no practical means of verifying the falsity of the representations at the moment of purchase, because the recurrence pattern only becomes apparent over time and across multiple offer cycles; and (d) Defendant designed the Game's interface to maximize the appearance of legitimacy and authority of these representations.

164. Plaintiff and members of the class entered into in-game purchase contracts in reliance on Defendant's misrepresentations and would not have entered into those contracts had they known the true facts.

165. Plaintiff, on behalf of herself and the class, seeks rescission of each in-game purchase contract induced by Defendant's misrepresentations and restitution of the full purchase price paid under each such rescinded contract.

166. Defendant profited from these false representations to consumers.

167. Plaintiff's and class members' reliance on Defendant's misrepresentations in its sale advertisements was a substantial factor in causing harm to Plaintiff and those similarly situated.

168. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and those similarly situated and will continue to both damage and deceive Plaintiff and the class members unless enjoined by this Court.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

### (By Plaintiff, individually and on behalf of the National Class and Washington Sub-Class)

169. Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

170. Plaintiff and the Classes have conferred a benefit upon Defendant in the form of the money Defendant received from them for the purchase of coins in Dice Dreams.

171. Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

172. Under principles of equity and good conscience, Defendant should not be permitted to

retain the money obtained from Plaintiff and the members of the Classes, which Defendant has unjustly obtained as a result of its unlawful and deceptive practices in connection with Dice Dreams.

173. As it stands, Defendant has retained millions of dollars in profits generated from Dice Dreams and should not be permitted to retain those ill-gotten profits.

174. Plaintiff and the class members lack an adequate remedy at law. The individual damages of many class members are too small to justify individual litigation, making equitable disgorgement necessary to capture the full scope of Defendant's wrongful gains. Defendant's profits from its unlawful conduct exceed the measurable individual losses of Plaintiff and the class members. Equitable disgorgement is necessary to ensure Defendant does not retain ill-gotten profits. Further, prospective injunctive relief to require Defendant to cease offering Dice Dreams to Washington consumers and to cease use of false limited-time sale presentations is an equitable remedy that cannot be obtained at law.

175. Accordingly, Plaintiff and the Classes seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein and injunctive relief.

## FIFTH CLAIM FOR RELIEF

### Violation of Israeli Consumer Protection Law, 5741-1981

### (Pleaded in the Alternative, on behalf of Plaintiff and the National Class)

176. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

177. This claim is pleaded in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3), and only in the event the Court determines that the application of Israeli law to Plaintiff's claims is required.

178. Section 2(a) of the Israeli Consumer Protection Law, 5741-1981, prohibits a dealer from doing anything, by act or omission, in writing, orally, or by conduct, that is liable to mislead a consumer in any material matter of a transaction, including (without limitation) the quality and characteristics of the asset and the ordinary or normal price or the price charged in the past.

179. Defendant violated Section 2(a) of the Consumer Protection Law by misrepresenting to Plaintiff and similarly situated consumers that in-game sale offers were limited in time, unique in value,

and constituted special discounts, when in fact the same bundles at the same prices were continuously re-offered.

180. Section 3 of the Consumer Protection Law prohibits a dealer from exploiting a consumer's distress, weakness, or undue influence to affect a transaction on unreasonable terms. Defendant violated Section 3 by deploying countdown timers, urgency language, and post-loss timing of offer presentation specifically designed to exploit impulse-purchase psychology in an addictive gameplay environment.

181. Section 31 of the Consumer Protection Law provides a private cause of action for violation of Sections 2 and 3, with damages available in the amount of consumer loss, including damages without proof of pecuniary loss in appropriate cases.

182. Plaintiff and the class members suffered damages in the amount of all sums paid in response to Defendant's deceptive limited-time sale offers, plus appropriate statutory damages under Israeli law.

## SIXTH CLAIM FOR RELIEF

### Violation of Israeli Contracts (General Part) Law, 5733-1973

### (Pleaded in the Alternative, on behalf of Plaintiff and the National Class)

183. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

184. This claim is pleaded in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3), and only in the event the Court determines that application of Israeli law to Plaintiff's claims is required.

185. Section 15 of the Contracts (General Part) Law, 5733-1973 provides that a party who entered a contract because of a misleading act by the other party, including the non-disclosure of facts that the other party was bound by law, custom, or the circumstances to disclose, may rescind the contract and recover damages.

186. Defendant induced Plaintiff and class members to enter into purchase contracts by means of misleading acts within the meaning of Section 15. Plaintiff seeks rescission of those contracts and restitution of all sums paid, together with damages under Section 12 of the Contracts (General Part) Law



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

for pre-contractual bad faith.

187. Independently, Section 30 of the Contracts (General Part) Law, 5733-1973, provides that a contract whose formation, content, or purpose is illegal, immoral, or contrary to public policy is void. Chapter 12 of the Israeli Penal Law, 5737-1977, prohibits "Prohibited Games, Lotteries and Betting," defining a "prohibited game" under Section 224 as a game whose outcome depends in a material part on chance and which involves any pecuniary stake.

188. Dice Dreams constitutes a "prohibited game" under Section 224 of the Israeli Penal Law because (a) the outcome of the dice game depends in a material part on chance, and (b) players stake rolls, which are purchased with real money, for the chance to win additional rolls. Accordingly, any contract between Plaintiff and Defendant for the purchase of rolls is void ab initio under Section 30 of the Contracts (General Part) Law.

189. Pursuant to Section 31 of the Contracts (General Part) Law, where a contract is void under Section 30, the court may require each party to restore to the other what each received under the void contract. Plaintiff and the class members seek restitution of all sums paid to Defendant for in-game purchases.

## <u>SEVENTH CLAIM FOR RELIEF</u>

### Violation of Unjust Enrichment Law, 5739-1979 (Israel)

### (Pleaded in the Alternative, on behalf of Plaintiff and the National Class)

190. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

191. This claim is pleaded in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3), and only in the event the Court determines that the application of Israeli law to Plaintiff's claims is required.

192. Section 1(a) of the Unjust Enrichment Law, 5739-1979, provides: "A person who has received an asset, service, or other benefit from another person without legal right, must restore the benefit, or its value, to the other."

193. Defendant received monetary payments from Plaintiff and class members for in-game purchases. Defendant received those payments without legal right because (a) the purchase contracts



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

were induced by deceit within the meaning of Section 15 of the Contracts (General Part) Law; (b) the contracts are void under Section 30 of the Contracts Law as contrary to public policy; and (c) Defendant's underlying conduct violated Section 2(a) of the Consumer Protection Law and Chapter 12 of the Penal Law.

194. Plaintiff and the class members are entitled to restitution of all sums paid to Defendant, together with interest and such other relief as Israeli law allows.

**EIGHTH CLAIM FOR RELIEF**

**Violation of Torts Ordinance (New Version) (Israel) — Deceit and Negligence**

**(Pleaded in the Alternative, on behalf of Plaintiff and the National Class)**

195. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

196. This claim is pleaded in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3), and only in the event the Court determines that the application of Israeli law to Plaintiff's claims is required.

197. Section 56 of the Torts Ordinance (New Version) defines the tort of deceit as a false representation of fact made by a defendant with knowledge of its falsity or reckless disregard, with intent to induce the plaintiff to act, and resulting in damage to the plaintiff.

198. Defendant's sale representations described above satisfy each element of deceit under Section 56.

199. Sections 35 and 36 of the Torts Ordinance (New Version) recognize a tort of negligence. Under Israeli law, a duty of care arises between commercial parties engaged in transactions where one party may reasonably foresee that its conduct will cause damage to the other. Defendant owed a duty of care to Plaintiff and class members in the design, operation, and marketing of Dice Dreams, including a duty not to operate a "prohibited game" in violation of the Penal Law and a duty not to deploy deceptive marketing techniques. Defendant breached those duties, and Plaintiff and class members were damaged as a result.

200. Plaintiff and the class members seek damages, restitution, and such other relief as Israeli law allows.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and the proposed Classes and Sub-Classes, pray for relief and judgment against Defendant as follows:

A. Certifying the Classes and/or Sub-Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Classes and/or Sub-Classes, and designating Plaintiff's counsel as class counsel;

B. Awarding Plaintiff and the class members compensatory damages and actual damages to be determined by proof;

C. Awarding Plaintiff and the class members appropriate relief, including actual and statutory damages;

D. Rescission and restitution of Plaintiff's and class members' purchases;

E. For punitive and treble damages;

F. For civil penalties;

G. For declaratory and equitable relief, including restitution and disgorgement;

H. In the alternative, granting rescission of the purchase contracts and restitution of all sums paid by Plaintiff and the class members under Israeli Contracts Law §§ 15, 30, and 31, and Israeli Unjust Enrichment Law § 1;

I. In the alternative, awarding damages, including statutory damages where applicable, under Israeli Consumer Protection Law § 31 and Israeli Torts Ordinance §§ 35–36 and 56;

J. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

K. Awarding Plaintiff and the class members the costs of prosecuting this action, including expert witness fees;

L. Awarding Plaintiff and the class members reasonable attorney's fees and costs as allowable by law;

M. Awarding pre-judgment and post-judgment interest; and



Carter Arnett PLLC
8150 N Central Expy Suite 500
Dallas, Texas 75206
Tel: (214) 550-8185

N. Granting any other relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

DATED: May 15, 2026

/s/ Omer Salik
Omer Salik (WA Bar No. 60433)
osalik@carterarnett.com
Carter Arnett PLLC
8150 N. Central Expressway
Suite 500
Dallas, TX 75206
Tel: (214) 550-8183

*Attorneys for Plaintiff*